FILED

**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**jeshelton595@gmail.com**

**Plaintiff, Pro Se**

2019 MAR -1  PM 4: 53

. . . . . . . COURT
. . . . LE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| **316 Covered Bridge Road** | ) | |
| **King of Prussia, PA 19406** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action** |
| | ) | |
| **vs.** | ) No. 6:18-cv-1335-Orl-41KRS | |
| | ) | |
| **CSG SOLUTIONS CONSULTING LLC** | ) | |
| **5703 Red Bug Lake Road, Suite 226** | ) | |
| **Winter Springs, FL 32708** | ) | |
| | ) | |
| **CARLOS SINENCIO GUERRERO a/k/a** | ) | |
| **CARLOS GUERRERO, individually and as** | ) | |
| **owner, officer, manager, and principal of CSG** | ) | |
| **SOLUTIONS CONSULTING LLC** | ) | |
| **6132 Quail Ridge Dr,** | ) | |
| **Lakeland, FL 33813** | ) | |
| **Defendants** | ) | **Jury Trial Demanded** |

## AMENDED COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory

damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47

U.S.C. 227, and 47 C.F.R. 64.1200 for the *ultra vires* illegal actions and deliberate and knowing

tortious activity of the CSG SOLUTIONS CONSULTING LLC ( "CSG"), and  CARLOS

SINCENCIO GUERRERO a/k/a CARLOS GUERRERO ("Mr. Guerrero"), collectively

1

"Defendants", in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("ATDS calls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

<h2 style="text-align:center">I.        Introduction</h2>

1.      Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff brings this action to challenge CSG's and Mr. Guerrero's practices in the telephone solicitation of their products and services. Specifically, Plaintiff challenges CSG's and Mr. Guerrero's illegal telephone solicitations by which they market their products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and their failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5.      Plaintiff alleges that Defendants made or commissioned numerous telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising CSG's and Mr. Guerrero's services, using an automatic telephone dialing system ("ATDS"), which is prohibited by the TCPA.

6.      Plaintiff never consented to receive any of these calls.

7.      All of the claims asserted herein arise out of CSG's and Mr. Guerrero's illegal telephone solicitation campaign and are a common fact pattern.

## II.      Jurisdiction and Venue

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to Plaintiff's claims occurred within the Middle District of Florida. CSG conducts business in this judicial district and was a registered Florida limited liability company with its principal mailing address located in Seminole County, prior to the company's dissolution in November, 2018. Carlos Guerrero is a resident of Polk County, Florida.

## III.      Parties

10.      Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

11.     Defendant CSG SOLUTIONS CONSULTING LLC ("CSG") is a Florida limited liability company with a registered principal address of 5703 Red Bug Lake Road, Suite 226, Winter Springs, FL 32708, which transacts business in, *inter alia*, Montgomery County, Pennsylvania.

12.     CSG was voluntarily dissolved as a legal entity with the Florida Secretary of State on November 14, 2018.

13.     CSG's principal address and mailing address listed on the Secretary of State is a post office box.

14.     CSG's authorized person and Manager according to the Florida Department of State's records is Carlos Guerrero. His listed address on the Florida Department of State's website is 1310 S. Florida Ave, Wauchula, FL 33873.

15.     Defendant Carlos Sinencio Guerrero a/k/a Carlos Guerrero is also the Registered Agent of CSG.

16.     Carlos Sinencio Guerrero is the person who rented the P.O. Box on file for CSG Solutions Consulting LLC on the Florida Department of State's website.

17.     In response to a request for boxholder information, United Parcel Service ("UPS") produced a true and correct copy of the driver's license which was on file for the P.O. box located at 5703 Red Bug Lake Rd. Suite 226, Winter Springs, Florida 32708. The driver's license on file is Carlos Sinencio Guerrero's.

18.     CSG may be served by and through its Registered Agent, Carlos Guerrero, at his usual place of abode, 6132 Quail Ridge Dr, Lakeland FL 33813.

19.     CSG is not registered to do business in the Commonwealth of Pennsylvania, however, CSG markets and sells, *inter alia*, lower credit card interest rate and/or credit card debt consolidation services to consumer in Pennsylvania and nationwide.

20.     According to the Florida Department of State's website, and upon information and belief, Mr. Guerrero is the principal owner of CSG. Mr. Guerrero reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in CSG's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Florida, Pennsylvania, and nationwide.

21.     At all times material hereto, each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

22.     Defendants aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

23.     At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

24.     Under the TCPA, an individual such as Mr. Guerrero may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

47 U.S.C. § 217 (emphasis added).

25.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

26.     Mr. Guerrero is personally liable under the "participation theory" of liability because he had direct, personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC, No. 12-22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015)

27.     Mr. Guerrero knew of CSG's TCPA violations, and directed employees and/or agents of CSG to continue making those violations, despite already having been sued previously for violating the TCPA.

28.     This is because Mr. Guerrero authorized and oversaw each of CSG's telemarketing processes and calls which were made on behalf of CSG.

29.     Mr. Guerrero knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the calls were made, and despite this fact, Mr. Guerrero made the decision to place robocalls to the Plaintiff's cell phone number without his prior express written consent.

30.     Mr. Guerrero makes the day to day decisions for CSG.

31.     Mr. Guerrero was the individual responsible for determining the calling scripts, arranging for pre-recorded messages to be sent to the Plaintiff's cell phone, and made the decision to target Plaintiff's Pennsylvania (484) area code and his telephone number for CSG's telemarketing campaign.

32.     Furthermore, Mr. Guerrero is also personally liable because he was responsible for ensuring CSG's agents and/or employees' TCPA compliance.

33.     Mr. Guerrero and his agents utilized an automatic telephone dialing system ("ATDS") to call the Plaintiff without his prior express written consent, which he knew was illegal, but he continued to do it anyway.

34.     Mr. Guerrero had the power to ensure that Plaintiff did not receive any more harassing calls from Defendants, but despite being told to put Plaintiff's number on Defendants' DNC list

and despite being sued by the Plaintiff, Mr. Guerrero continued to condone, direct, pay for, and allow such illegal robocalls to be placed to Plaintiff's cell phone.

## Factual Allegations

33.   Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

34.   (484) 626-3942 is the only telephone number which Plaintiff owns.

35.   Plaintiff received all of the calls as alleged herein on his personal cellular telephone number, (484) 626-3942. Plaintiff's number has been successfully registered on the National Do-Not-Call registry since June 26, 2015, and has also been successfully registered on the Pennsylvania Do-Not-Call list since May 15, 2018.

36.   Each of the following thirty-three (33) calls was initiated using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice.

37.   Eleven (11) of these calls were also made using an artificial and/or prerecorded voice.

38.   Plaintiff received telemarketing robocalls initiated using an ATDS from the Defendants and/or their agents on the following dates and times:

| Calls to Plaintiff's Cell Phone (484) 626-3942 | | | |
|---|---|---|---|
| Call: | Date: | Time: | Caller ID: |
| 1 | 10/17/2017 | 1:54 PM | 484-626-2324 |
| 2 | 1/26/2018 | 5:54 PM | Blocked |
| 3 | 1/26/2018 | 7:10 PM | Blocked |
| 4 | 2/2/2018 | 1:42 PM | 484-626-2324 |
| 5 | 4/18/2018 | 6:41 PM | 484-626-2324 |

| 6 | 5/16/2018 | 1:40 PM | 484-626-2324 |
|---|---|---|---|
| 7 | 6/08/2018 | 12:57 PM | 484-626-9245 |
| 8 | 6/08/2018 | 1:34 PM | (888) 245-9181 |
| 9 | 6/08/2018 | 1:36 PM | (888) 245-9181 |
| 10 | 6/11/2018 | 12:12 PM (PST) | (888) 245-9181 |
| 11 | 6/11/2018 | 12:14 PM (PST) | (888) 245-9181 |
| 12 | 6/11/2018 | 12:15 PM (PST) | (888) 245-9181 |
| 13 | 6/11/2018 | 12:18 PM (PST) | (888) 245-9181 |
| 14 | 6/11/2018 | 12:20 PM (PST) | (888) 245-9181 |
| 15 | 6/21/2018 | 12:58 PM (PST) | 484-626-2324 |
| 16 | 6/21/2018 | 1:30 PM (PST) | (877) 847-2911 |
| 17 | 6/21/2018 | 1:54 PM (PST) | Unknown |
| 18 | 6/21/2018 | 1:55 PM (PST) | Unknown |
| 19 | 6/21/2018 | 2:06 PM (PST) | (877) 847-2911 |
| 20 | 6/21/2018 | 2:07 PM (PST) | (877) 847-2911 |

| 21 | 6/21/2018 | 2:07 PM (PST) | (877) 847-2911 |
| 22 | 6/21/2018 | 2:07 PM (PST) | (877) 847-2911 |
| 23 | 6/21/2018 | 2:07 PM (PST) | (877) 847-2911 |
| 24 | 6/21/2018 | 2:28 PM (PST) | (877) 847-2911 |
| 25 | 8/28/2018 | 11:31 AM | (484) 626-1634 |
| 26 | 8/28/2018 | 5:36 PM | (484) 626-1440 |
| 27 | 8/28/2018 | 5:40 PM | 1 (800) 945-2000 |
| 28 | 8/28/2018 | 5:40 PM | 1 (800) 945-2000 |
| 29 | 8/28/2018 | 5:47 PM | 1 (800) 945-2000 |
| 30 | 8/28/2018 | 5:50 PM | 1 (800) 945-2000 |
| 31 | 8/28/2018 | 5:55 PM | 1 (800) 945-2000 |
| 32 | 8/28/2018 | 6:23 PM | 1 (888) 245-9181 |
| 33 | 8/30/2018 | 1:00 PM | 1 (484) 626-9685 |

**39.** The aforementioned pre-recorded messages did not state the real name of the business or person that was calling Plaintiff, and instead utilized the use of vague fictitious names such as "Debt Partners".

**40.** Many of these prerecorded calls were made by the Defendants using local-area-code caller ID spoofing from numbers including 484-626-2324, 484-626-9245, 484-626-1440, and 484-626-9685, which was done using an autodialer in an attempt to confuse Plaintiff into thinking someone locally was calling.

**41.** Defendants would also call on an unknown number using a prerecorded message

10

described below. This was done purposefully to cloak defendant's true identity and make it nearly impossible for Plaintiff to hold the Defendants liable for these violations.

42.    The defendants' prerecorded calls started with a prerecorded message stating:

"Hello this is Jonathan with Debt Partners. I see looking at your debt profile you may qualify for a lower monthly payment and a lower interest rate on your unsecured debt. You also can qualify for paying a portion of what you owe. Please press 1 now to check your eligibility or press 9 to put your number on the DNC list."

43.    When Plaintiff pressed one, the calls were transferred from the robodialer to a live agent working for the Defendants.

44.    In addition to the aforementioned prerecorded messages, after the Plaintiff pressed one, the calls would include a distinctive click and pause, followed by a period of dead air and a "bloop" sound and a machine noise, followed by choppy audio, which is indicative of a predictive automated dialer transferring Plaintiff to a live human being. These facts demonstrate that the calls were made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

45.    When a human being arrived on the phone line, the Plaintiff then received a scripted sales pitch about getting lower interest rates on his credit cards.

46.    If at any time Plaintiff asked the agent any question that was considered too inquisitive, the agent would immediately terminate the call.

47.    Several of these calls would disconnect abruptly a few seconds after Plaintiff answered and said "hello". This is indicative of an Automatic Telephone Dialing System (ATDS) because there was nobody on the line to be connected to and because there was machine noise in the

background. Because of their automated nature, such systems often exhibit this abnormal behavior.

**48.**     Plaintiff believes one or more of the representatives he spoke with were from a foreign country, most likely India, due to their distinct accents.

**49.**     The purpose of the defendants' calls as stated in their message was to acquire Plaintiff's credit card number(s), eventually confirming the card holder had a minimum amount thereon.

**50.**     In such calls where a live agent eventually came on line, that agent told Plaintiff he must have a minimum balance of $4,000 on that card to qualify for the special rate program.

**51.**     The caller[s] would claim that the interest on such card can be reduced to zero, provided Plaintiff was willing to pay a $2,000.00 service fee for doing so.

**52.**     After Plaintiff provided his credit card information to the caller[s], the caller[s] explained how much money Plaintiff will save by signing up to do business with the caller's company, CSG, thus attempting to justify their outrageous fees.

**53.**     If asked for a company name, the Defendants used a generic name such as Credit Card Services, a non-existent business entity.

**54.**     The caller[s] would always refuse to provide a legitimate business name unless and until Plaintiff provided his credit card number.

**55.**     If Plaintiff refused to provide the card number, the caller[s] immediately terminated the call.

**56.**     The Defendants used these tactics to perpetrate a fraud or injustice, or otherwise to circumvent telemarketing laws such as the TCPA.

**57.**     On June 8, 2018, Plaintiff provided his real credit card number, last four digits of his

social security number, and date of birth. Defendants told Plaintiff they were "checking his eligibility". Defendants placed Plaintiff on hold for several minutes.

**58.**     During this time, Defendants were simply calling the automated system maintained by Plaintiff's credit card company and using the information provided to get Plaintiff's current credit card balance, as well as the date and amount of Plaintiff's last payment.

**59.**     If Plaintiff's credit card did not have a high enough balance (i.e. over $4,000), Defendants asked if Plaintiff had any other credit cards and insisted that Plaintiff needed to have a balance greater than this amount in order to qualify.

**60.**     On October 17, 2018, January 26, 2018 (twice), February 2, 2018, April 18, 2018, and May 16, 2018 (**Calls 1 through 6**), Plaintiff received pre-recorded robocall messages from the defendants either using a blocked caller ID or from the caller ID 484-626-2324.

**61.**     Plaintiff received **Call 7** on June 8, 2018. This was a pre-recorded robocall message made by Defendants.

**62.**     When Plaintiff hung up from **Call 7**, he did not give the Defendants permission for a call back.

**63.**     **Calls 8 and 9** were made using an ATDS. Plaintiff answered and heard a distinctive click and pause, followed by a few seconds of dead air, followed by a balloon-popping "bloop" sound, before a human being came on the phone.

**64.**     After **Call 8**, during which Defendants attempted to pitch their products and services, Plaintiff hung up and did not give consent for a call back.

**65.**     Despite this fact, Defendants called him back using an ATDS on **Call 9**.

66.     During **Call 9** at 1:36 PM on June 8, 2018, Defendants provided Plaintiff with the website URL www.secondchoicehorizon.com. This is a website that is used by Defendants in connection with their illegal operations or activities.

67.     Plaintiff was able to identify the Defendants because he received an e-mail as a direct result of these illegal phone calls from billing@thecsgsolutions.com on June 10, 2018 at 5:16 AM.

68.     Upon information and belief, the website, www.thecsgsolutions.com, is owned, maintained, paid for, and/or operated by the Defendants, CSG Solutions Consulting LLC and Carlos Guerrero.

69.     On June 11, 2018, Plaintiff received an automated robocall from 888-245-9181 (**Call 10**) and was connected with a representative of the Defendants.

70.     **First DNC Request:** Plaintiff told the Defendants' agent he was not interested and told the caller not to call back.

71.     Despite this clear expression that Plaintiff did not want to get any more calls, Plaintiff received another four (4) ATDS calls from 888-245-9181 on June 11, 2018, attempting to get Plaintiff to do business with the Defendants. These calls were **Calls 11 through 14**.

72.     Plaintiff answered and heard a distinctive click and pause, followed by a few seconds of dead air, followed by a balloon-popping "bloop" sound.

73.     When a human being arrived on the phone line, Plaintiff was connected to the same representative as before, who was calling on behalf of the Defendants.

74.     In fact, on **Call 12**, the representative acknowledged that Plaintiff had hung up the phone during **Call 11** and asked not to be called, but continued with his sales pitch by repeatedly asking "why do you not want to receive a once-in-a-lifetime 0% APR offer on your credit cards?"

75.     When Plaintiff simply hung up the phone during **Call 12**, Defendants and/or Defendants' agents continued to call Plaintiff using an ATDS another two (2) times on the same day, June 11, 2018 (**Calls 13 and 14**).

76.     During **Calls 13 and 14**, the Defendants' agent kept asking the same question "why did you hang up, sir? We have not finished getting you a lower rate."

77.     **Second DNC Request:** In response, Plaintiff repeatedly told the caller he was not interested, asked to not receive any more calls, and hung up.

78.     Defendants did not honor Plaintiff's second DNC request and continued calling.

79.     These brazen violations after multiple and direct Do-Not-Call requests demonstrate that the calls were placed prior to the implementation of any proper do-not-call policies or procedures by the Defendants.

80.     No such DNC policies or procedures had been implemented because none existed, as Defendants continued to flagrantly violate the TCPA, and did not scrub their calling lists against the National Do-Not-Call Registry.

81.     On June 21, 2018, defendants continued to harass Plaintiff with robocalls (**Calls 15 through 24**).

82.     During **Call 15**, defendants continued to use the spoofed caller ID which displayed on Plaintiff's cell phone as 484-626-2324.

83.     Plaintiff notes this caller ID had been previously utilized by the Defendants.

**84.** Plaintiff answered and heard a distinctive click and pause, followed by a few seconds of dead air, followed by a balloon-popping "bloop" sound.

**85.** When a human being arrived on the phone line, Plaintiff was connected to the same representative as he spoke with in previous calls, who was calling on behalf of the Defendants.

**86.** Plaintiff then heard a scripted sales pitch about getting lower interest rates on his credit cards.

**87.** Plaintiff was in State of California on June 21, 2018.

**88.** After Plaintiff listened to the sales pitch for an extended period of time, the telemarketer said he would get a "financial advisor" on the phone.

**89.** Instead, the call abruptly disconnected.

**90.** At 1:30 PM on June 21, 2018, defendants called Plaintiff back using an ATDS from the caller ID 877-847-2911 (**Call 16**).

**91.** When Plaintiff answered, he experienced the same ATDS-call circumstances as before- a long pause, followed by a "bloop" sound, before he was connected to a live representative.

**92.** Plaintiff spoke to the Defendants' representative for a few minutes, then the call disconnected. Plaintiff did not consent to receive a call back.

**93.** At 1:54 PM and 1:55 PM, Plaintiff received robocalls from "unknown" caller IDs using an ATDS (**Calls 17 and 18**).

**94.** When Plaintiff answered, he experienced the same ATDS-call circumstances as before- a long pause, followed by a "bloop" sound.

**95.** Plaintiff quickly realized it was the same foreign representative calling on behalf of defendants with a lower credit card interest rate sales pitch.

96.     Plaintiff was busy and simply hung up the phone on **Call 17**.

97.     During **Call 18**, when the defendants called back using the same ATDS system as before at 1:55 PM, the caller seemed agitated that Plaintiff had hung up the phone and asked "why did you hang up sir?"

98.     Plaintiff hung up once again.

99.     Upon information and belief, Defendants have the ability and capacity to use their telephone dialing system to display unknown or no caller ID whatsoever. This is characteristic of an ATDS. Most legitimate callers do not usually call on unknown caller ID.

100.    Between 2:06 PM and 2:07 PM, defendants contacted Plaintiff's cell phone with robocalls, placing five (5) within two minutes, and another at 2:28 PM. (**Calls 19-24**).

101.    Plaintiff attempted to answer these calls, however, they would all disconnect a few seconds after Plaintiff answered and said "hello". Plaintiff suspects that this call was placed using an Automatic Telephone Dialing System (ATDS) because there was nobody on the line to be connected to and because there was machine noise in the background, as well as the incredibly short amount of time to receive call(s) back. Because of their automated nature, such systems often exhibit this abnormal behavior.

102.    **Third DNC Request:** At the conclusion of **Call 24**, Plaintiff told the caller he was not interested and hung up the phone.

103.    **Fourth DNC Request:** On July 31, 2018, Plaintiff sent an e-mail to the Defendants demanding not to receive any additional robocalls, demanding that his cellphone number be placed on Defendants' DNC list, and demanding to receive a copy of Defendants' Do-Not-Call policy.

17

**104.**    Defendants did not respond to Plaintiff's e-mail.

**105.**    Defendants did not place Plaintiff's cellphone number on their DNC list.

**106.**    Defendants failed and/or refused to provide their Do-Not-Call policy to the Plaintiff.

**107.**    This is because Defendants do not have any such DNC policy.

**108.**    **Fifth DNC Request**: On August 15, 2018, Plaintiff filed his original complaint in this Court, alleging knowing and willful TCPA violations.

**109.**    The original complaint and summons were served upon Defendants on August 23, 2018. See ECF No. 10 and 12.

**110.**    On August 28, 2018, Defendants placed a prerecorded robocall to the Plaintiff from the caller ID (484) 626-1634 (**Call 25**).

**111.**    On August 28, 2018, Plaintiff received **Call 26** from the caller ID (484) 626-1440.

**112.**    **Call 26** was a prerecorded robocall pitching the Defendants' lower interest rate credit card services.

**113.**    and called on August 30, 2018 from the caller ID (484) 626-9685.

**114.**    **Calls 27 through 31** were all made using an ATDS from the caller ID 1 (800) 945-2000 because there were distinctive "click and pauses", followed by distinctive "bloop" sounds before Plaintiff was connected with a representative.

**115.**    The Defendants purposely and knowingly used the caller ID 1 (800) 945-2000 because this is the customer service number for Chase Bank's Card Services department.

**116.**    The reason Defendants "spoofed" Chase Bank's telephone number was to perpetrate a fraud on the Plaintiff, so that he would think a legitimate financial institution was making the call, when in fact it was the Defendants who made the calls.

18

117.   **Sixth DNC Request:** Plaintiff made a verbal DNC Request during **Call 31**.

118.   During **Call 32**, which was made using an ATDS because there was a distinctive "click and pause", followed by a distinctive "bloop" sounds before Plaintiff was connected with a representative.

119.   **Call 33** occurred on August 30, 2018 and included a pre-recorded robocall message pitching Defendants' services.

**Allegations Supporting Treble Damages for Knowing and Willful TCPA Violations:**

120.   Mr. Guerrero and CSG are serial TCPA violators who have received numerous consumer complaints online about their illegal robocalls.

121.   Defendants were sued in *Zelma v. Guerrero*, Superior Court of New Jersey, Bergen County, No. BER-L-7948-17 (the *"Zelma* case").

122.   Mr. Guerrero was served with the *Zelma* lawsuit on January 25, 2018, thereby putting him on actual notice that making robocalls to DNC-listed numbers is illegal.

123.   Mr. Guerrero failed to appear or otherwise defend in the *Zelma* case.

124.   In the *Zelma* case, the Court entered a judgment in the amount of $66,500.00 against Mr. Guerrero, individually.

125.   The Superior Court of New Jersey found that Mr. Guerrero had committed knowing and willful violations of the TCPA, as well as various state statutes.

126.   In the instant case, Plaintiff e-mailed Defendants at info@thecsgsolutions.com and to info@secondchoicehorizon.com on July 31, 2018 to inform them in writing of their illegal conduct, and asked in writing for the calls to stop. This request was not honored.

127.   Mr. Guerrero continued to personally authorize as many as nine (9) additional

telemarketing robocalls to be placed to the Plaintiff after being served with the Plaintiff's original complaint on August 23, 2018. See ECF No. 12.

**128.** Mr. Guerrero knew that in using such dialers, an ATDS has the capacity to load, store and initiate calls to numbers in its system or can be programmed to initiate calls from an algorithm, either randomly or sequentially, with or without human intervention.

**129.** Mr. Guerrero knew that in producing these calls, the subject dialers not only produced the defendant's prerecorded message about their services, the dialers initiated those calls to consumers whose numbers were on the National Do-Not-Call Registry.

**130.** The defendants each bear a measure of culpability and blameworthiness for their unlawful acts because they failed, refused or consciously turned a blind eye to exercise the duty, control and responsibility along with the power and authority, to curtail the fraudulent and unlawful activities of their employees.

**131.** At no time did Plaintiff provide his consent to receive any calls from Defendants and/or their agents.

**132.** Prior to these unsolicited calls, the Plaintiff has never done any business with Defendants and Plaintiff never provided Defendants with his cellular telephone number.

**133.** Defendants did not have the Plaintiff's prior express written consent to make these calls.

**134.** In fact, before filing this lawsuit, the Plaintiff wrote to CSG asking if they had his prior express written consent to make the calls, but CSG did not provide any evidence of consent.

**135.** Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**136.**   Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

**137.**   Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

**138.**   Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is his residential and personal telephone.

**139.**   Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**140.**   These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**141.**   Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

**<u>Causes Of Action</u>**

**<u>First Cause of Action</u>**

(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

**142.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

21

143.    As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C.

§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

144.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

145.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

146.    As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute,

up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

147.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

148.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

149.    As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C.

§ 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory

damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

22

**150.**     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**151.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**152.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**153.**     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**154.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**155.**     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**156.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**157.**   As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**158.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**159.**   As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**160.**   Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**161.**   As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## WHEREFORE, Plaintiff prays for relief against defendants, as follows:
### IV.   Prayer for Relief

24

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: **$102,000** (Thirty-three (33) counts of "Sales call to a number registered on the National Do-Not-Call Registry" & "ATDS call", one count of of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and one count of "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

### V.    Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: February 28, 2019

*James E. Shelton*

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com